IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DIANNE LYNN LEE, | ) | Civ. No. 09-00245 ACK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S DECISION TO DENY PLAINTIFF SOCIAL SECURITY DISABILITY INSURANCE BENEFITS

### PROCEDURAL BACKGROUND

On August 15, 2006, Dianne L. Lee ("Plaintiff") applied for disability insurance benefits under Title II of the Social Security Act. Administrative Record Dated June 25, 2009 at 20-25 ("Rec."). Plaintiff's application was denied both initially and on reconsideration. Rec. 26-31. As a result, Plaintiff requested a hearing before an administrative law judge. Rec. 39.

On July 9, 2008, Administrative Law Judge Gary Lee ("ALJ") presided over the hearing by video conference in which Plaintiff, although fully apprised of her right to representation, appeared pro se. Rec. 12; 244-61. On September 15, 2008, the ALJ denied Plaintiff's request for disability insurance benefits. Rec. 12-19. The ALJ found that Plaintiff was not eligible for disability insurance benefits because she was not insured at the onset of her disability. Rec. 12.

Specifically, the ALJ found that Plaintiff did not have sufficient earnings to yield the requisite quarters of coverage which would have resulted in Plaintiff being insured at the onset of her disability. Rec. 12. The Appeals Council, after noting that the ALJ made an immaterial miscalculation of Plaintiff's quarters of coverage, declined to review the ALJ's decision. Rec. 3-6. Therefore, the ALJ's decision became the final decision of the Commissioner of Social Security. See 42 U.S.C. § 405(h).

On June 2, 2009, Plaintiff commenced this action, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g) ("Complaint").[1] Plaintiff's Complaint was accompanied by a demand for a jury trial. A jury is not available under 42 U.S.C. § 405(g), however, because the statute does not affirmatively and unambiguously grant a right to a jury trial. See Lehman v. Nakshian, 453 U.S. 156, 168 (1981) ("A plaintiff in an action

---

[1] Although Plaintiff alleges jurisdiction under 42 U.S.C. § 405(g) in her Complaint, in her opening brief Plaintiff alleges jurisdiction under 28 U.S.C. § 1346, not 42 U.S.C. § 405(g). See Pl.'s Br. at 3. In its answering brief, Defendant observed that the Court does not have jurisdiction under 28 U.S.C. § 1346, however, as 42 U.S.C. § 405(h) provides: "No action against the United States, the Commissioner of Social Security, or any other officer or employee thereof shall be brought under section 1331 or 1346 of title 28, to recover on any claim arising under this title." Def.'s Br. at 5. In her reply brief, Plaintiff argues that the Court does, in fact, have jurisdiction under 28 U.S.C. § 1346, but cites 42 U.S.C. § 405(g) in support of this assertion. Accordingly, the Court finds that jurisdiction for Plaintiff's appeal is conferred by 42 U.S.C. § 405(g), not 28 U.S.C. § 1346.

against the United States has a right to trial by jury only where
Congress affirmatively and unambiguously granted that right by
statute.").

On September 30, 2009, Plaintiff filed an opening brief
("Pl.'s Br.").

On October 30, 2009, the Commissioner of Social
Security ("Defendant" or "Commissioner") filed an answering brief
("Def.'s Br.").

On January 20, 2010, Plaintiff filed a reply brief
("Pl.'s Reply Br.").[2/]

On January 28, 2010, the Court held a hearing on the
instant appeal.  Plaintiff appeared pro se, as she had at the
hearing before the ALJ and on appeal from the ALJ's decision.
Plaintiff was accompanied by James Merritt, Plaintiff's ex-
husband and former IRS Appeals Officer for seventeen years.

## FACTUAL BACKGROUND

Plaintiff was born in 1946 and holds a law degree from
Fordham University School of Law.  Rec. 32.  Prior to the
represented onset date of her disability, Plaintiff worked as a
certified public accountant.  Rec. 32.  Plaintiff suffered

---

[2/] Although the reply brief was untimely filed pursuant to
the briefing schedule set by Magistrate Judge Kevin S.C. Chang
(setting Plaintiff's optional reply brief deadline for November
13, 2009), the Court permitted Plaintiff's belated filing because
the Court's minute order on November 12, 2009 continuing the
hearing from December 1, 2009 to January 28, 2010.

strokes in both 2003 and 2005 and, as a result, became unable to work on February 4, 2005.  Rec. 20-24, 33.[3/]  Plaintiff filed an application for disability insurance benefits on August 15, 2006. Rec. 12.

The claim was denied both initially and on reconsideration on the grounds that Plaintiff was not insured at the onset of her disability.  Rec. 26-31.  On appeal, the ALJ affirmed these decisions.  Rec. 12-19.  In order to be eligible for disability insurance benefits, a person must prove disability insured status; that is, the person is required to have earned sufficient income to have been covered for twenty of the forty quarters preceding the alleged onset date of disability.  See 20 C.F.R. § 404.130(b).  The ALJ explained:

> The quarter of coverage (QC) is the basic unit of Social Security coverage used in determining an individual's insured status. [20 CFR 404.140(a)] QCs are credited based on an individual's earnings covered under Social Security. [20 CFR 404.140(a)] QCs are credited for each part of total covered earnings in a calender year that equals the amount required for a QC in that year. [20 CFR 404.140(c) and 404.143, and POMS RS 00301.250] The amount required for a QC has increased each year since 1978 based on a formula and is shown on the earnings record.  No more than four QCs can be credited for any calender year. [20 CFR 404.143(a)].
>
> To attain disability insured status, an insured individual must have at least 20 QCs in the 40-

---

[3/] Plaintiff was able to work after the 2003 stroke as she worked full time as a tax CPA earning in excess of $80,000 in 2004.  Rec. 16.

> quarter period ending with that quarter (in which
> an application is filed).  This is the so-called
> 20/40 Rule. [20 CFR 404.130(b)].

Rec. 12-13.  After reviewing the evidence, the ALJ concluded that

Plaintiff should only be credited with eight quarters of coverage

(earned in 2003 and 2004) in the 10-year period preceding the

represented onset date of her disability, and therefore was

ineligible for disability insurance benefits.  Rec. 18.

At the hearing before the ALJ, Plaintiff argued that

she had the requisite quarters of coverage because she filed

self-employment federal income tax returns for the years 1999,

2000, 2001, and 2002, which should have been factored into

Plaintiff's eligibility status.  Rec. 13.  Self-employment income

may count towards an individuals disability insurance status.

See 42 U.S.C. § 405(c); Rec. 12-13.  However, whether or not the

Social Security Administration can update a claimant's self-

employment earnings records is governed by the Social Security

Act, which provides that a claimant must have filed self-

employment federal income tax returns within three years, three

months, and fifteen days of the taxes being due for that year.

See 42 U.S.C. 405(c); Rec. 13-14.  Specifically, 42 U.S.C. 405(c)

provides, in relevant part:

> (3) The Commissioner's records shall be evidence
> for the purpose of proceedings before the
> Commissioner of Social Security or any court of
> the amounts of wages paid to, and self-employment
> income derived by, an individual and of the
> periods in which such wages were paid and such

5

income was derived.

. . .

(4) . . . <u>After the expiration of the time limitation</u> [three years, three months, and fifteen days] following any year[:]

(A) the Commissioner's records . . . of the amounts of wages paid to, and self-employment income derived by, an individual during any period in such year shall be conclusive for the purposes of this subchapter;

. . .

(C) the absence of an entry in the Commissioner's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such individual in such year unless it is shown that he <u>filed a tax return</u> of his self-employment income for such year <u>before</u> the expiration of the time limitation following such year, in which case the Commissioner of Social Security <u>shall include</u> in the Commissioner's records the self-employment income of such individual for such year.

42 U.S.C. § 405(c) (emphasis added).

When determining whether an individual is covered under the Social Security Act, the Commissioner's records are generally conclusive. <u>See</u> 42 U.S.C. 405(c)(3), (c)(4)(C). An individual may rebut this presumption by submitting evidence that the individual filed tax returns proving self-employment income before the end of the statutory time limitation. <u>See</u> 42 U.S.C. § 405(c)(1)(B).

According to the Commissioner's records, Plaintiff filed

her 1999 tax return on November 21, 2005; her 2000 tax return on

July 20, 2006; her 2001 tax return on August 7, 2006; her 2002

tax return on August 7, 2006; and her 2003 and 2004 tax returns

on July 18, 2006.  Rec. 15-16; 206.[4/]

        Plaintiff argues that she submitted her 1999, 2000,

2001, and 2002 federal income tax returns within the three year,

three month, and fifteen day time limitation, and that the IRS

lost or did not record receipt of these income tax returns,

requiring her to <u>resubmit</u> additional federal income tax returns

for these years in 2005 and 2006.  Rec. 252-33; Plaintiff's

Opening Brief 3-4, 6.[5/]  In other words, Plaintiff asserts that

_____

[4/] At the hearing before the ALJ, Plaintiff produced her
2005 federal income tax return.  Rec. 251.  However, the return
showed no net earnings and therefore Plaintiff was not credited
with any quarters of coverage in 2005.

[5/] Specifically, on appeal from the ALJ's decision,
Plaintiff argued:

        The Court does not realize that the date noted in
        the IRS records as "the" date of receipt, may well
        be the date on which the second or third or fourth
        duplicate of a return was submitted by a taxpayer
        to the IRS at the IRS's request, after the IRS
        Service Center employees misplaced or misfiled the
        first several submissions.  Mr. Merritt, an IRS
        Appeals Officer for seventeen years, testified
        that there were *acknowledged* instances (reported
        at the time by the major wire services) of IRS
        Service Center employees shredding large batches
        of unprocessed tax returns when their workload
        became too onerous.  The Service Center Director
        publicly estimated that over one million documents
        went missing in this manner in one year alone!
        Needless to say, such tax returns were never
                                        (continued...)

the Commissioner's records reflect the filing dates of the second or third time she submitted her self-employment federal income tax returns for those years.[6]  At the hearing before the ALJ, Plaintiff testified that she submitted her 1999, 2000, and 2001 federal income tax returns to the IRS on March 20, 2002, and her 2002 tax return on April 15, 2003.[7]  Rec. 252-53, 255.  As

---

[5](...continued)
> logged into the system as having been received by the IRS.  Months or years later, the Revenue Service would contact those taxpayers and inquire as to why they had "failed to file" their tax returns.  When the taxpayers then refiled the returns at the request of the Service, such later filings were logged in as if they were the original filings.  Mr. Merritt effectively testified that IRS Service Center records of filing dates were notoriously unreliable, and long recognized as such even among IRS employees.

Rec. 242.

[6] At the hearing on this appeal, Plaintiff stated that she did not file her 1999-2001 federal income tax returns in the years in which they were due because she was going through a difficult divorce which was completed in January of 2002.

[7] In contrast, in her opening brief Plaintiff asserts that she submitted her 1999 and 2000 federal income tax returns to the IRS on March 20, 2002, and her 2001 and 2002 tax returns to the IRS on April 15, 2003.  Pl.'s Br. at 3-4.  Further, at the hearing on this appeal, Plaintiff stated that she filed her 1999 tax return in March of 2002, and her 2000-02 tax returns sometime before April 15, 2003, but she could not recall the exact dates in which they were filed.  These differing accounts may be a result of the strokes Plaintiff suffered in 2003 and 2005 as "Plaintiff admits her recollection of the periods prior to her strokes are not that clear."  Pl.'s Reply Br. at 2.  Nevertheless, the Court notes that whether Plaintiff claims to have filed her 2001 federal income tax return on March 20, 2002, or April 15, 2003, is important because Plaintiff received an
(continued...)

evidence of these claims Plaintiff submitted two receipts of certified mailings to the IRS dated March 20, 2002 and April 16, 2003.  Rec. 237-38.

The ALJ, however, was unpersuaded by the certified mailing receipts as they did not indicate that the mailings included federal income tax returns, and because the certified mailings coincided with the dates Plaintiff was granted extensions for filing her income tax returns.  With respect to the certified mailing receipts, the ALJ explained:

> The claimant also produced certified mail receipt cards to the IRS with receipt dates of March 20, 2002 and April 16, 2003. [Ex. 23] However, there is no indication that said tax returns were included in these mailings, as opposed to other documents such as requests for extension of time in which to file said returns.  For instance, the IRS records show that she received extensions of time to file tax returns in April of 2002 and in

---

[7]/(...continued)
extension to file her 2001 federal income tax returns to October 15, 2002.  Rec. 199.  If Plaintiff filed her 2001 federal income tax return on March 20, 2002, as she asserted at the hearing before the ALJ, there would have been no need to receive an extension to file her 2001 federal income tax return.  At the hearing on this appeal, Plaintiff claimed that, while working as a CPA, her staff always requested multiple extensions of time for filing her income tax returns, regardless of whether the tax returns had already been filed.  The Court observes, however, that Plaintiff did not request any extensions of time to file her 1999 federal income tax returns, and only requested one extension of time to file her 2000 federal income tax return.  Rec. 195, 197.  Notwithstanding that Plaintiff made no payments when she allegedly filed her federal income tax returns in 2002 and 2003, she further asserted at the hearing on this appeal that she did not timely file her 1999 and 2000 income tax returns because it was difficult to do so as they included eight rental properties and two time shares.

April of 2003.  The claimant has not produced tax
returns that are dated in the time frame of these
mailings.  In fact, the tax returns she has
produced are undated. [Exhibits 8, 9, 10, 11, 12,
and 13]  It is somewhat troubling to fathom that
the claimant, a certified public accountant, would
have filed her tax returns in March of 2002 and
April 15, 2003, and then failed to follow-up on
the status of those returns until August of 2006.
This is especially so since she also testified
that she did not concurrently submit payments for
the amounts owed on those tax returns.  While the
claimant did have two strokes, one in 2003 and the
other in 2005, she managed to work full-time as a
tax CPA in the year 2004, earning in excess of
$80,000.  Thus she would have had ample time to
check on those returns in 2004.

Rec. 16.  In other words, the ALJ reasoned that the mere fact

Plaintiff mailed something to the IRS on March 20, 2002, and

April 16, 2003, did not prove that she mailed her federal income

tax returns on those dates.[8/]  Rec. 16

Applying the above-mentioned rules to Plaintiff's

claim, the ALJ found that:

1. The claimant notified the Agency in August of
2006 that she had self-employment income for the
years 1999, 2000, 2001, 2002, 2003, and 2004.

2. The claimant filed her tax returns on the
following dates as indicated in Internal Revenue
Service records:

1999 tax return filed on November 21, 2005.
2000 tax return filed on July 20, 2006.
2001 tax return filed on August 7, 2006.

---

[8/] Notably, even though Plaintiff claims to have filed her
1999-2003 federal income tax returns on these dates, Plaintiff
paid and did not contest the late filing penalty and interest
imposed by the IRS for the 1999, 2000, 2001, and 2002 tax
returns.  Rec. 16.

2002 tax return filed on August 7, 2006.
2003 tax return filed on July 18, 2006.

3. The Agency should have included the claimant's
2003 self-employment income of $54,441 in her
earnings record. [42 USC 405(c)]

4. The claimant has earned 8 quarters in the 10-
year period preceding her alleged onset date of
disability of February 4, 2005.

5. The claimant does not meet the nondisability
requirements for a period of disability and
Disability Insurance Benefits set forth in Section
216(i) of the Social Security Act and is not
insured for benefits through the date of this
decision.

Rec. 18.   In sum, after reviewing the conflicting evidence, the

ALJ found that Plaintiff did not timely file her self-employment

federal income tax returns for the years 1999, 2000, 2001, and

2002 and thus had only eight quarters of coverage in the forty

quarters of coverage preceding the represented onset date of her

disability.   On that basis, the ALJ found that Plaintiff fell

short of the required twenty quarters of coverage and therefore

was not eligible to receive disability insurance benefits.   Rec.

18.

Although the ALJ found that Plaintiff should be

credited four quarters of coverage for both 2003 and 2004, thus

totaling eight quarters of coverage, in denying Plaintiff's

request to review the ALJ's decision the Social Security Appeals

Council indicated that Plaintiff should have been credited seven

additional quarters of coverage earned in 1995 and 1996.   Rec. 4;

17.   Specifically, the Social Security Appeals Council observed that the records reflect that, in the forty quarters preceding the represented onset date of Plaintiff's disability, Plaintiff earned three quarters of coverage in 1995 and four quarters of coverage in 1996.[9]   Rec. 213.   In declining Plaintiff's request to review the ALJ's decision, the Social Security Appeals Council explained to Plaintiff:

> The record shows that you meet the fully insured requirement, but do not meet the 20/40 requirement at any time after December 31, 1998.  The record shows that you have 11 quarters of coverage during the period of 10 years ending with the quarter in which you allege that you became disabled, in March 2005.  This includes 3 quarters of coverage for 1995, 4 quarters of coverage in 1996 and 4 quarters of coverage in for [sic] 2004. . . .  The Administrative Law Judge's decision correctly shows that earnings from the 2003 taxable year should have been included, as well.  Although this inclusion would result in 4 additional credits of coverage [totaling 15], you do not meet the basic requirements for a period of disability and disability insurance benefits set forth in section 216(i) of the Social Security Act, and you are not insured for benefits through the date of the decision.

Rec. 4.  In other words, in addition to the eight quarters of coverage earned in 2003 and 2004, the Social Security Appeals Council noted that Plaintiff should be credited for three

---

[9]  The Social Security Administration records also reflect that Plaintiff was covered for four quarters each in 1989, 1991, 1992, but these years are not relevant for purposes of applying the 20/40 rule because they are not within the forty quarters preceding the represented onset date of Plaintiff's disability. Rec. 213.

quarters of coverage in 1995, and four quarters of coverage in 1996, totaling fifteen quarters of coverage.[10/]   Id.   Because Plaintiff's fifteen quarters of coverage still do not satisfy the 20/40 rule, the Social Security Appeals Council found it unnecessary to review the ALJ's decision.   Rec. 3-4.

---

[10/] Defendant acknowledges that the ALJ mistakenly found that Plaintiff had eight quarters of coverage, but instead conceded that Plaintiff actually had 16 quarters of coverage.   Defendant explained:

> As of Plaintiff's alleged onset date, Plaintiff was only covered for sixteen of the previous forty quarters; the ALJ mistakenly stated that Plaintiff was covered for only eight quarters, but this was a harmless error, because in either case Plaintiff fell short of the required twenty quarters.

Rec. 8.   Defendant's concession includes one more quarter of coverage than the Social Security Appeals Council's calculation. However, determining whether Plaintiff had 15 or 16 quarters of coverage is immaterial to the ultimate determination of Plaintiff's disability insurance status, because in either case Plaintiff would not satisfy the 20/40 rule.   Nevertheless, it appears that the difference in computation centers around whether the first quarter of 2005, the quarter in which Plaintiff represents she became disabled, should be considered when calculating Plaintiff's quarters of coverage.   As explained by the Social Security Appeals Council, in order to satisfy the 20/40 rule, an individual "must have 20 Social Security credits (5 years of work under Social Security) during the 10-year period ending with the quarter in which he or she became disabled." Rec. 4 (citing 20 C.F.R. § 404.130 (emphasis added)).   In this case, Plaintiff alleges that she became disabled on February 4, 2005.   If the first quarter of 2005 counts towards Plaintiff's disability insurance status, the first quarter of 1995 would not count towards Plaintiff's quarters of coverage because that quarter would fall outside of the 20/40 rule.   On the other hand, if the first quarter of 2005 does not count towards Plaintiff's disability insurance status, Plaintiff would receive all four quarters of credit from 1995.   As discussed above, in either case, Plaintiff still falls short of the required twenty quarters of coverage.

## STANDARD OF REVIEW

The Social Security Act permits appeal of a final decision of the Commissioner of the Social Security Administration to a federal district court.  <u>See</u> 42 U.S.C. § 405(g).  The district court has the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision with or without remanding the cause for a rehearing.  <u>Id.</u>  A decision by the Social Security Commissioner denying social security disability insurance benefits, such as the decision here, will not be disturbed by the reviewing district court if it is free of legal error and supported by substantial evidence.  <u>See</u> <u>Green v. Heckler</u>, 803 F.2d 528, 529 (9th Cir. 1986).

In reviewing the Social Security Administration's decision, this Court may set aside a denial of benefits "only if it is not supported by substantial evidence or is based on legal error." <u>Bray v. Comm'r of Soc. Sec.</u>, 554 F.3d 1219, 1222 (9th Cir. 2009) (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880 (9th Cir. 2006)).  In other words, this Court deems conclusive the factual findings of administrative judges that are supported by substantial evidence.  <u>See</u> 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence shall be conclusive.").  In determining the existence of substantial evidence, the whole administrative

record must be considered, weighing the evidence that both

supports and detracts from the Commissioner's conclusion.  See

Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).

"Substantial evidence means more than a mere scintilla, but less

than a preponderance, i.e., such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion."  Bray, 554 F.3d at 1222.  The ALJ must reconcile

factual differences in evidence, determine witness credibility,

and weigh the evidence presented.  Richardson v. Perales, 402

U.S. 389, 401 (1971).  Further, "'[w]here the evidence as a whole

can support either' a grant or a denial, '[this Court] may not

substitute [its own] judgment for the ALJ's.'"  Massachi v.

Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citations omitted).

### DISCUSSION

It is well settled in the Ninth Circuit that a claimant

has the burden to prove onset of disability before the expiration

of insured status in order to receive social security disability

benefits.[11/]  See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.

1995) (noting that a claimant must prove disability before the

expiration of his/her insured status) (emphasis added).  Although

Plaintiff couches her argument in different terms, Plaintiff's

appeal boils down to a single question: whether the Social

_____

[11/] According to the Social Security Appeals Council, the
last date Plaintiff was insured for purposes of the 20/40 rule
was December 31, 1998.  Rec. 4.

Security Commissioner should have considered Plaintiff's self-employment federal income tax returns for the years 1999, 2000, 2001, and 2002 when calculating her total quarters of coverage based on Plaintiff's assertion that she timely filed her federal income tax returns for those years and the fact that she produced certified mailing receipts to the IRS on March 20, 2002, and April 16, 2003, despite the fact that the Social Security Administration records reflect that said federal income tax returns were untimely filed.[12/]  After reviewing the record, the Court finds that the Social Security Commissioner's decision was supported by substantial evidence.[13/]

---

[12/] In her reply brief, Plaintiff briefly asserts that the denial of her social security disability benefits, especially in light of the fact that she has now paid her federal income taxes for the years 1999-2004, is "unfair and [] unconstitutional." Pl.'s Reply Br. at 6.  Plaintiff's constitutional claim has no merit as the 20/40 rule has been upheld as constitutional by the Ninth Circuit.  See Harvell v. Chater, 87 F.3d 371, 373 (9th Cir. 1996); see also Tuttle v. Sec'y of Health, Educ. and Welfare, 504 F.2d 61, 63 (10th Cir. 1974) (holding that the requirements of the 20/40 rule are constitutional "[b]ecause they have a rational base and are free from invidious discrimination . . . .")  In Tuttle, the Tenth Circuit observed that the 20/40 rule promoted the legitimate objective of assuring "substantial contribution to the system before the onset of a disability."  504 F.2d at 63 (emphasis added).

[13/] Although not raised in the Complaint, in her opening brief Plaintiff argues that this Court must set aside the Social Security Commissioner's findings because the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Pl.'s Br. at 5 (citing 5 U.S.C. §§ 706(2)(A),(D)).  This standard does not apply to the present action, however, as 42 U.S.C. § 405(g) provides the standard of review in the present matter.  See 42 U.S.C. § 405(h) ("No
(continued...)

Plaintiff contends that she filed her federal income tax returns for the years 1999, 2000, 2001, and 2002 within the three year, three month, and fifteen day limitation.  Pl.'s Br. at 3-4.  Specifically, Plaintiff asserts that she filled her 1999 and 2000 federal income tax returns on March 20, 2002, and her 2001 and 2002 federal income tax returns on April 16, 2003.[14/] Id.  To support this claim, Plaintiff offers certified mailing receipts evidencing that Plaintiff sent mail to the IRS on March 20, 2002, and April 16, 2003.  Rec. 237-38.

The ALJ noted that the IRS records reflect that Plaintiff filed her 1999-2003 federal income tax returns on the following dates:

---

[13/] (...continued)
findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as provided [in § 405(g)].");  see also Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984) (observing that a decision to deny benefits by the Social Security Commissioner will only be set aside if the Commissioner's findings are based on legal error or are not supported by substantial evidence).  Accordingly, the Court's review is limited to whether the decision was "not supported by substantial evidence or is based on legal error."  Bray, 554 F.3d at 1222. Furthermore, even if the arbitrary and capricious standard were to apply, the Court would affirm the Social Security Commissioner's decision because the Commissioner considered all of the relevant factors and offered an explanation that was consistent with the evidence presented.  See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 44 (1983).

[14/] In contrast, at the hearing before the ALJ, Plaintiff asserted that she filled her 1999, 2000, and 2001 federal income tax returns on March 20, 2002, and her 2002 federal income tax return on April 15, 2003.  Rec. 251.

> 1999 tax return filed on November 21, 2005.
> 2000 tax return filed on July 20, 2006.
> 2001 tax return filed on August 7, 2006.
> 2002 tax return filed on August 7, 2006.
> 2003 tax return filed on July 18, 2006.

Rec. 18.[15/]  The ALJ acknowledged that Plaintiff claimed to have timely filed her 1999-2003 federal income tax returns.  Rec. 251. In addition, the ALJ recognized that Plaintiff was able to produce certified mailing receipts to the IRS on March 20, 2002, and April 16, 2003.  Rec. 237-38.  After reviewing all of the evidence, however, the ALJ concluded that Plaintiff's 1999-2002 federal income tax returns were untimely filed.  The ALJ explained:

> [T]here is no indication that [the 1999-2002] tax returns were included in [the certified] mailings, as opposed to other documents such as requests for extension of time in which to file said returns. For instance, the IRS records show that she received extensions of time to file tax returns in April of 2002 and in April of 2003.  The claimant has not produced tax returns that are dated in the time frame of these mailings. . . . It is somewhat troubling to fathom that the claimant, a certified

---

[15/]  In Plaintiff's reply brief she asserts, for the first time, that the "filings on the July-August, 2006 dates would have been physically impossible." Pl.'s Reply Br. at 3.  Later in the same brief, however, Plaintiff states that she "refiled" her 2000-03 federal income tax returns over the course of a few weeks starting in July of 2006.  Pl.'s Reply Br. at 7.  Because Plaintiff has not previously raised this argument and because Plaintiff contradicts herself within the confines of the reply brief, the Court need not address this assertion.  Further, the date on which Plaintiff claims to have "refiled" her 1999-2002 federal income tax returns is inconsequential because the pertinent issue on appeal is whether Plaintiff filed her 1999-2002 income tax returns in March of 2002 and April of 2003, as she alleges.

public accountant, would have filed her tax
returns in March of 2002 and April 15, 2003, and
then failed to follow-up on the status of those
returns until August of 2006. . . . While the
claimant did have two strokes, one in 2003 and the
other in 2005, she managed to work full-time as a
tax CPA in the year 2004, earning in excess of
$80,000.  Thus she would have had ample time to
check on those returns in 2004.

Rec. 16.  In light of this, the ALJ found that the IRS records

correctly reflected the dates in which Plaintiff filed her 1999-

2003 federal income tax returns.  Specifically, the ALJ noted

that the mere fact that Plaintiff mailed <u>something</u> to the IRS on

March 20, 2002, and April 16, 2003, did not prove that she mailed

her federal income tax returns on those dates.  Rec. 16.  To this

end, the ALJ observed that Plaintiff was granted extensions to

file her federal income tax returns in April 2002 and April 2003,

which coincided with the dates of the certified mailing

receipts.[16/]  <u>Id.</u>  In other words, the ALJ thought it more likely

---

[16/] Although not addressed by the ALJ, the Court observes
that the IRS records indicating when Plaintiff made requests for
extensions of time to file her federal income tax returns are in
direct conflict with when Plaintiff claims to have filed her 2001
and 2002 income tax returns.  At the hearing before the ALJ,
Plaintiff testified that she sent her 2001 federal income tax
return to the IRS on March 20, 2002.  Rec. 252-53.  However, the
IRS records indicate that Plaintiff requested two extensions to
file her 2001 income tax returns, one extension to extend the
deadline to August 15, 2002, and the second to extend the
deadline to October 15, 2002.  Rec. 199.  Had Plaintiff filed her
2001 tax returns on March 20, 2002, as she indicated at the
hearing before the ALJ, there would be no need to request a
second extension to file her 2001 income tax return.  In her
opening brief, Plaintiff appears to resolve this conflict by
claiming that she sent her 2001 income tax returns on April 16,
(continued...)

that the certified mailings sent to the IRS on March 20, 2002,
and April 16, 2003, contained requests for extensions to file her
tax returns than the actual tax returns themselves.[17/]   Id.

_____

[16/](...continued)
2003.  Pl's Br. at 4.  This correction, however, does not resolve
the additional conflict with her 2002 federal income tax returns,
which, both at the hearing before the ALJ and in her opening
brief, she claims to have filed on April 16, 2003.  Id.; Rec.
253.  The IRS records indicate that Plaintiff also received two
extensions to file her 2002 federal income tax returns, the first
extension extended the deadline to August 15, 2003, and a second
extension to October 15, 2003.  Rec. 202.  Had Plaintiff filed
her 2002 income tax return on April 16, 2003, there would be no
need for Plaintiff to request a second extension to file her 2002
income tax return.  Consequently, not only do the extensions
granted by the IRS coincide with the dates of the certified
mailings, but they also conflict with the dates in which
Plaintiff claims to have filed her 2001 and 2002 federal income
tax returns.  At the hearing on this appeal, the Court inquired
as to why neither the ALJ nor Defendant had addressed this point,
but Defendant's counsel was unable to answer this question.

[17/] Although the Social Security Appeals Council was
unpersuaded by Plaintiff's contention, on appeal Plaintiff
asserted that she did not use certified mailing receipts for
requests for extension of time to file income tax returns, as she
explained:

    It is also important to note that both postal
    receipts in question show Dianne Lee as the
    individual who mailed the items to the IRS.  When
    Ms. Lee mailed an extension form to the IRS in
    connection with her own individual tax returns,
    she mailed them along with the extension forms
    (Forms 4868) for her hundreds of tax clients in
    the same thick packet; because the extensions were
    automatically granted by the Service, she felt it
    unnecessary to obtain proof of mailing.  When she
    mailed a tax return for clients, she sometimes
    needed to obtain a postal receipt, and the receipt
    showed the sender to be Diane Lee CPA.  When she
    mailed her own individual tax returns to the IRS,
    she mailed it in her capacity as an individual and
                                        (continued...)

In her opening brief, Plaintiff argues that the statutory "mail box" rule requires the Court to find that the federal income tax returns were timely filed.  Pl.'s Br. at 5-6 (citing 26 U.S.C. § 7502).  Pursuant to 26 U.S.C. § 7502, the general rule is that the date a return, claim, statement, or other document is post marked is deemed to be the date of delivery or payment, as the case may be.  26 U.S.C. § 7502(a)(1); see also Estate of Wood v. Comm'r of Internal Revenue, 909 F.2d 1155, 1158 (8th Cir. 1990) ("[T]he general rule posited by the statute, found in section 7502(a)(1), is that the date of postmark will be deemed the date of delivery."); and Anderson v. United States, 966 F.2d 487, 489 (9th Cir. 1992) (same). Further, the statute also provides that showing a document was sent by registered or certified mail constitutes prima facie evidence that the document was delivered.  See 26 U.S.C. § 7502(c)(2); see also 26 C.F.R. § 301.7502-1(e); Estate of Wood, 909 F.2d at 1158 ("The statute also provides, as indicated, that showing a document was sent by registered or certified mail shall

---

17/(...continued)
not as a CPA, so she made out the sender information on the postal receipt form as simply Dianne Lee.  The two postal receipts submitted to the Court show that in both cases, she made out the sender information as Dianne Lee, not as Diane Lee CPA.

Rec. 240 (emphasis in original).  Nevertheless, the Appeals Council declined to review the ALJ's decision.  Rec. 3-6.

constitute prima facie evidence that the document was delivered.").

Without deciding whether the rebuttable presumption created in § 7502(a)(1) applies to the case at bar,[18/] the Court finds that Plaintiff's statutory mail box claim has no merit. Plaintiff fails to recognize that although the certified mailing receipts may serve as prima facie evidence that <u>something</u> was delivered to the IRS on those dates, it does not prove that she mailed her <u>income tax returns</u> on those dates.  26 U.S.C. § 7502(a)(1) ("[T]he date a return, claim, statement, or <u>other document</u> is post marked is deemed to be the date of delivery or payment, as the case may be." (emphasis added)).  The cases on which Plaintiff relies are distinguishable because in those cases, a second person verified that the tax returns were included in the mailing and little or no evidence was presented to rebut the alleged filing date.  <u>See</u> <u>Estate of Wood</u>, 909 F.3d at 1157 (noting that a post office employee testified that the sender told her that the mailing included a federal estate tax return and that no evidence was offered to rebut the alleged delivery date); <u>and</u> <u>Anderson</u>, 966 F.2d at 489, 492 (observing that the claimant's friend, who was in the car when claimant

---

[18/] Although § 7502(a)(1) creates a rebuttable presumption of delivery if delivered by certified mail for IRS purposes, there is also a rebuttable presumption that the Social Security Commissioner's records are conclusive.  <u>See</u> 42 U.S.C. § 405(c)(1)(B).

visited the post office to deliver the tax returns, testified that claimant sent the tax returns on the asserted date and that the government only rebutted the claim by producing records of non-receipt).  In this case, Plaintiff did not introduce testimony from another person verifying Plaintiff's assertion that she filed her 1999-2002 federal income tax returns in March of 2002 and April of 2003, and there is significant evidence rebutting Plaintiff's claim.  After weighing all of the evidence, the ALJ believed that the certified mailings contained requests for extensions of time to file her income tax returns instead of the actual income tax returns.

Moreover, the statute only creates a presumption of delivery, and that presumption may be rebutted by other evidence.[19/] See Estate of Wood, 909 F.2d at 1161 ("[E]ven direct

_____

[19/] Plaintiff's main argument seems to rest on the basis that the IRS sometimes loses or does not receive income tax returns as she notes: "There is a well-known fact that the government has 'lost' thousands of tax documents that have been mailed and delivered . . . [t]here are also lost tax returns and misplaced tax returns."  Pl's Br. at 7 (citing an associated press article as authority).  Plaintiff's argument that the IRS has lost documents on various occasions, and Mr. Merritt (Plaintiff's ex-husband)'s proposed testimony about conceding issues of late filing or non-filing, while possibly relevant, are only slightly helpful to Plaintiff and were not successful in persuading the ALJ that she filed her 1999-2002 federal income tax returns on time.  See Pl's Br. at 7.  Also, at this stage of the proceedings the question before the Court is whether, in view of the evidence presented to the ALJ, the ALJ's decision was reasonable and supported by substantial evidence.  See Massachi, 486 F.3d at 1152.  As discussed above, the Court finds that the ALJ's decision was reasonable and supported by substantial evidence.

proof of postmark raises only a presumption of delivery, which is rebuttable by the Commissioner [of the IRS].")  Specifically, in this case, the ALJ was persuaded by the facts that (1) the certified mailing receipts coincided with the dates that Plaintiff was granted extensions to file her federal income tax returns, (2) Plaintiff is a certified public accountant who claims that she filed her income tax returns in March of 2002 and April of 2003, but failed to follow-up on the status of those returns until August of 2006 even though she admitted that she did not include payments with said returns,[20]

---

[20] At the hearing before the ALJ, the ALJ was skeptical since the IRS had not followed up with Plaintiff after Plaintiff allegedly submitted self-employment income tax returns in 2002 and 2003 for the years 1999-2002 without including payments.  The ALJ inquired:

> Q   [ALJ:] Now, as a CPA and experienced in filing returns, wouldn't you . . . reasonably have expected that you would be notified by the IRS - -
>
> A   [Plaintiff:] At some point - -
>
> Q   [ALJ:] - - shortly after you filed?
>
> A   [Plaintiff:] Not shortly.  Because usually they take a long time to indicate that you owe taxes.
>
> Q   [ALJ:] And how long is that usual period of time?
>
> A   [Plaintiff:] I really don't know.  I never, I mean, I was a, the first time I filed taxes late.  I, I filed taxes late because I was going through a divorce.
>
> (continued...)

24

(3) Plaintiff worked full time in 2004 earning in excess of $80,000, suggesting that Plaintiff was entirely capable of following up on the status of her federal income tax returns, (4) the income tax returns submitted to the Social Security Administration were undated, and (5) Plaintiff paid and did not dispute the penalties and interest assessed on her federal income taxes. Rec. 12-19. Even if the certified mailing receipts created a rebuttable presumption of delivery, the ALJ is ultimately responsible for weighing the evidence and determining

---

[20]/(...continued)
Rec. 256-57. The Court agrees with the ALJ that it seems highly unlikely that the IRS would not have contacted Plaintiff and requested payment for the 1999-2002 self-employment federal income tax returns shortly after they were filed. It should be noted that at various stages in the proceedings, Plaintiff has taken conflicting positions as to whether the IRS contacted her after she allegedly submitted her income tax returns in March of 2002 and April of 2003. At the hearing before the ALJ, Plaintiff asserted that the IRS did not contact her regarding her failure to file her 1999-2002 income tax returns until August 7, 2006. Rec. 255. In her opening brief, Plaintiff asserted that she "received a call between March 20, 2002 and April 13, 2003 from the IRS about filing [her 1999 and 2000 federal income tax returns] under a wrong Social Security Number" which she then corrected over the phone. Pl.'s Br. at 4. Yet another explanation is provided in Plaintiff's reply brief, in which she stated that she was told by the IRS in November of 2005 that the IRS had not received her 1999 federal income tax return, and that in July of 2006 the IRS called Plaintiff and told her she was "also missing 2000 to 2003 income tax figures." Pl.'s Reply Br. at 7. Plaintiff's conflicting explanations demonstrate the need for an ALJ to reconcile factual differences in evidence, determine witness credibility, and weigh the evidence presented. See Richardson, 402 U.S. at 401. In this case, after reviewing the evidence, the ALJ concluded that Plaintiff did not timely file her 1999-2002 federal income tax returns.

witness credibility.  See Andrews v Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  In this case, after reviewing all of the evidence, which was sufficient to rebut a presumption of delivery, the ALJ found that Plaintiff did not timely file her 1999, 2000, 2001, and 2002 federal income tax returns.

In sum, after reviewing the administrative record, the Court finds that the Social Security Commissioner's determination that Plaintiff's 1999, 2000, 2001, and 2002 federal income tax returns were untimely filed is supported by substantial evidence. Accordingly, the Court will not disturb this determination.  See Green, 803 F.2d at 529.

Having affirmed the Social Security Commissioner's decision to not credit Plaintiff with quarters of coverage for the years 1999, 2000, 2001, and 2002, the next question is whether Plaintiff has sufficient earnings to satisfy 20/40 rule, notwithstanding the exclusion of Plaintiff's 1999-2002 earnings. The Social Security Appeals Council observed, and Defendant concedes, that the ALJ mistakenly stated that Plaintiff was covered for only eight quarters in the forty quarters preceding the represented onset date of her disability.  Def.'s Br. at 8; Rec. 4.  The Commissioner's records show that Plaintiff was covered for four quarters each in the years 1995, 1996, and

2004.[21/]   Rec. 213.   The ALJ properly concluded that Plaintiff's

self-employment income tax returns for the years 2003 and 2004

should be considered because these returns were submitted within

the three year, three month, fifteen day time limitation.   Rec.

17.   Because the represented onset date was February 4, 2005, the

Social Security Appeals Council observed that Plaintiff should

also be credited three quarters of coverage in 1995, and four

quarters of coverage in 1996.[22/]   Rec. 4.   Accordingly, the Social

_____

[21/]   The Social Security Administration records also reflect
that Plaintiff was covered for four quarters each in 1989, 1991,
1992, but these years are not relevant for purposes of applying
the 20/40 rule because they are not within the forty quarters
preceding the represented onset date of Plaintiff's disability.
Rec. 213.

[22/] The Social Security Appeals Council explained:

> The record shows that you meet the fully insured
> requirement, but do not meet the 20/40 requirement
> at any time after December 31, 1998.   The record
> shows that you have 11 quarters of coverage during
> the period of 10 years ending with the quarter in
> which you allege that you became disabled, in
> March 2005.   This includes 3 quarters of coverage
> for 1995, 4 quarters of coverage in 1996 and 4
> quarters of coverage in for [sic] 2004.
>
> . . .
>
> The Administrative Law Judge's decision correctly
> shows that earnings from the 2003 taxable year
> should have been included, as well.   Although this
> inclusion would result in 4 additional credits of
> coverage, you do not meet the basic requirements
> for a period of disability and disability
> insurance benefits . . . ."

Rec. 4 (emphasis added).

Security Appeals Council concluded that Plaintiff had fifteen quarters of coverage in the forty quarters preceding the represented onset of her disability.[23/]  Id.

The ALJ's miscalculation is immaterial, however, as Plaintiff still would not have the requisite twenty quarters of coverage even if she were credited three or four quarters of coverage for the year 1995, and four quarters of coverage for the year 1996.[24/]  An ALJ's error that is "inconsequential to the ultimate nondisability determination" constitutes harmless error and is not grounds for reversal.  See Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Chapman v.

_____

[23/] As discussed above, Defendant suggests that Plaintiff had sixteen quarters of coverage, apparently crediting Plaintiff four quarters of coverage for the year 1995.  In any event, whether Plaintiff had fifteen or sixteen quarters of coverage is of no consequence because in either case Plaintiff still would not have the requisite twenty quarters of coverage.

[24/] It is not entirely clear whether the ALJ's miscalculation was a factual mistake (failing to take into account the quarters of coverage earned in 1995 and 1996) or a legal error (improperly applying the 20/40 rule).  The Court observes that the ALJ stated that in order to satisfy the 20/40 rule, a claimant must have at least twenty quarters of coverage in the forty quarter period "ending with the quarter in which an application is filed."  Rec. 13 (emphasis added).  In contrast, the Social Security Appeals Council indicated that the forty quarter period ends with the quarter in which the claimant becomes disabled.  Rec. 4 (citing 20 C.F.R. § 404.130).  In this case, Plaintiff applied for disability insurance benefits on August 15, 2006.  Rec. 20-25.  Thus, even if the ALJ erroneously believed that the forty quarter period ended with the date in which the application is filed, the ALJ still should have credited Plaintiff with quarters of coverage in 1996.  As discussed above, however, the ALJ's miscalculation was a harmless error because Plaintiff still does not have the requisite twenty quarters of coverage.

<u>Apfel</u>, 236 F.3d 480, 481 (9th Cir. 2000) (affirming an ALJ's finding that a claimant who was covered for nineteen of the forty quarters preceding his alleged onset date did not qualify for disability insurance benefits).  In this case, the ALJ's miscalculation is inconsequential to the ultimate nondisability determination and therefore does not constitute grounds for reversal.  <u>See</u> <u>Stout</u>, 454 F.3d at 1055.

### CONCLUSION

For the foregoing reasons, the Court finds that the Social Security Administration's denial of benefits was supported by substantial evidence and that the Social Security Administration did not make any material errors of law. Accordingly, the Court affirms the decision of the Commissioner of the Social Security Administration.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, January 29, 2010.



_____
Alan C. Kay
Sr. United States District Judge

<u>Lee v. Social Sec'y Comm.</u>, Civ. No. 09-00245 ACK-KSC: Order Affirming the Commissioner of Social Security's Decision to Deny Plaintiff Social Security Disability Insurance Benefits